UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
                                     :

JESSICA CORREA,                      :

                            :        Case No.: 1:19-CV-07511 (JGK)

                  Plaintiff,     :

                            :        **ANSWER OF DEFENDANT**

        - vs. -                 :        <u>**TROUTMAN SANDERS LLP**</u>

                            :

TROUTMAN SANDERS LLP and GERALD    :
FRANCESE, jointly and severally,      :

                            :

                    Defendants.    :

---------------------------------------------------------------------x

Defendant Troutman Sanders LLP ("Troutman"), by its attorneys Friedman Kaplan Seiler & Adelman LLP, hereby answers the Complaint of plaintiff Jessica Correa ("Plaintiff"), on personal knowledge as to itself and its own actions, and upon information and belief as to all other matters, as follows:

        **1.    Plaintiff brings this action against Troutman Sanders LLP (hereafter "Defendant Troutman" or "the firm"), Gerald Francese (hereinafter "Defendant partner Francese") (collectively referred to throughout as "Defendants,") due to their unlawful sex discrimination, sexual harassment and retaliation based on the same in violation of Title VII of the Civil Rights Act of 1964, ("Title VII") 42 U.S.C. § 2000e _et seq._**

        **Answer:**        Denies the allegations of Paragraph 1, including the allegation that either Troutman or Francese engaged in sex discrimination, sexual harassment, or retaliation against Plaintiff (or any other individual), and that Defendants violated Title VII; except admits only that Plaintiff has brought this action against Troutman and Francese under Title VII, alleging sex discrimination, sexual harassment, and retaliation.

        **2.    Plaintiff further brings this action based on Defendants' violation of New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290 _et seq._ and New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 _et seq._ for unlawful sex discrimination, sexual harassment and retaliation.**

**Answer:** Denies the allegations of Paragraph 2, including the allegation that either Troutman or Francese engaged in sex discrimination, sexual harassment, or retaliation against Plaintiff (or any other individual), and that Defendants violated the NYSHRL or the NYCHRL; except admits only that Plaintiff has brought this action against Troutman and Francese under the NYSHRL and the NYCHRL.

**3.      This Lawsuit seeks actual, compensatory and punitive damages as well as declaratory and injunctive relief based on Defendants unlawful discrimination, sexual harassment and retaliation based on the same against Plaintiff.**

**Answer:** Denies the allegations of Paragraph 3, including that Plaintiff is entitled to any damages or relief; except admits only that Plaintiff's Complaint seeks actual, compensatory and punitive damages and declaratory and injunctive relief.

**4.      This Court has subject matter jurisdiction under 28 U.S.C. §1331, as this action arises under Title VII.**

**Answer:** Denies the allegations of Paragraph 4. *See* the Eleventh through Thirteenth Affirmative Defenses below.

**5.      This Court may assert supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims under 29 U.S.C. § 1367.**

**Answer:** Denies the allegations of Paragraph 5 based on the response to Paragraph 4.

**6.      Venue is proper in the Southern District of New York, under 28 U.S.C. §1391, where the events and/or omissions giving rise to Plaintiff's claims occurred in New York, New York.**

**Answer:** Denies the allegations of Paragraph 6; except admits only that some of the comments and actions that Plaintiff alleges in the Complaint are alleged to have occurred in this District, and that venue is proper in this Court.

**7.      On November 13, 2018, Plaintiff filed her initial complaint with the equal Employment Opportunity Commission ("EEOC").  On April 22, 2019, Plaintiff timely requested her right to sue letter from the EEOC.**

**Answer:**     Denies knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 7.

**8.     On May 14, 2019 Plaintiff received a right to sue letter from the EEOC, dated May 8, 2019.**

**Answer:**     Denies knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 8.

**9.     Plaintiff Jessica Correa (hereinafter "Plaintiff") is a forty-three-year-old female, who currently resides, and at all times relevant to this charge resided, in New York County, New York.**

**Answer:**     Denies knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 9; except admits only that while Plaintiff worked for

Troutman she listed her residence as being in New York County.

**10.     Plaintiff is and was, at all times relevant herein, an "individual" and "employee" of Defendant Troutman Sanders LLP within the meaning of all relevant federal, New York State and local laws, including, but not limited to, Title VII of the Civil Rights Act, 42 U.S.C. §§2000e *et. seq.* ("Title VII").**

**Answer:**     Denies the allegations of Paragraph 10; except admits only that

Plaintiff was an employee of Troutman from January 17, 2017 until August 16, 2018.

**11.     Upon information and belief, at all times relevant to the Complaint, Defendant Troutman was and is a limited liability partnership. Upon information and belief, Defendant Troutman maintains its principal place of business at 600 Peachtree Street, NE, Suite 3000, Atlanta, Georgia 30308 and maintains its New York office at 875 3rd Ave, New York, New York, 10022.**

**Answer:**     Admits the allegations of Paragraph 11 of Plaintiff's Complaint.

**12.     Defendant Troutman was, at all times relevant to this charge, Plaintiff's "employer" within the meaning of 42 U.S.C. §2000e, as it is engaged in an industry affecting interstate commerce and employed more than 20 employees for each working day during each of 20 or more calendar work weeks in the current and preceding calendar year.**

**Answer:**     Admits the allegations of Paragraph 12.

13.     Upon information and belief, Defendant Partner Francese is and has been at all times relevant to this action, a Partner and a direct supervisor over Plaintiff at Defendant Troutman. Upon information and belief, and at all times relevant to the Complaint, Defendant Partner Francese had direct control over employment practices at Defendant Troutman. Defendant Partner Francese is a white man who was approximately fifty-eight years old at the time of the events giving rise to Plaintiff's claims.

Answer:     Denies the allegations of Paragraph 13, including that Francese was Plaintiff's supervisor and had direct control over employment practices at Troutman; except admits only that Francese is a former partner of Troutman and is fifty-eight years old at the time of this Answer; and denies knowledge or information sufficient to form a belief as to Francese's race.

14.     Upon information and belief, and at all times relevant, Defendants maintained, individually and jointly, substantial control over the terms and conditions of Plaintiff's employment, including but not limited to, hiring and firing authority, disciplinary authority and authority to investigate sex discrimination, sexual harassment and hostile work environment claims.

Answer:     Denies the allegations of Paragraph 14; except admits only that Troutman had substantial control over the terms and conditions of Plaintiff's employment, including the authority to hire, terminate, and discipline Plaintiff, and investigate any claims that she might make.

15.     Plaintiff is a female, highly skilled personal assistant with twenty years of experience working as a legal secretary in large, New York City law firms.

Answer:     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 of Plaintiff's Complaint; except denies that Plaintiff is "highly skilled"; and admits only that at Troutman, Plaintiff worked as a legal secretary to lawyers that she was assigned to support.

16.     In or around January 2018, Plaintiff was offered the position of legal secretary at Defendant Troutman.

Answer:     Denies the allegations of Paragraph 16.

**17.      Plaintiff was immediately assigned to work for two male Partners-Defendant Partner Francese, and Patrick Costello. Her duties included answering their phones, handling their calendars, managing their expenses, and otherwise assisting them.**

   **Answer:**  Admits the allegations of Paragraph 17; and for the sake of clarification states further that Plaintiff was assigned to work for other lawyers in addition to Francese and Costello.

**18.      After Plaintiff was hired, but before her official start date of January 17, 2017, Defendant Partner Francese invited her out to lunch. Defendant Partner Francese told her he was her "friend." Plaintiff was thrilled that her new boss seemed to be very kind and that he envisioned a team approach to their work.**

   **Answer:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18.

**19.      Defendant Partner Francese explained to Plaintiff that he would be out of state for her first month of work with his family, but that he looked forward to working with her when he returned.**

   **Answer:**  Admits the allegations of Paragraph 19.

**20.      On or about January 17, 2017, Plaintiff started working at Defendant Troutman as a legal secretary for Defendant Partner Francese and Partner Patrick Costello (hereinafter "Partner Costello").**

   **Answer:**  Admits the allegations of Paragraph 20.

**21.      Plaintiff was thrilled to finally achieve her goal of working at Defendant Troutman and initially, she experienced no issues with any of her superiors or colleagues.**

   **Answer:**  Denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21.

**22.      Plaintiff's colleagues advised her that Defendant Partner Francese usually takes his staff out to lunch, that "he's very generous" and "a godfather-like figure." Plaintiff also learned that Defendant Partner Francese was well-liked around the office in general, and he shared candy with staff and colleagues and celebrated special occasions with top-shelf alcohol.**

**Answer:**        Denies knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 22.

**23.**        Throughout her employment Defendant Partner Francese would frequently talk about his lavish purchases, such as his watch. For example, in or about March of 2017, he specifically advised Plaintiff that his wristwatch was worth $25,000 and that "the band alone is $2,500.00."

**Answer:**        Denies the allegations of Paragraph 23.

**24.**        Upon information and belief, Defendant Partner Francese made comments like these in an attempt to impress Plaintiff.

**Answer:**        Denies the allegations of Paragraph 24.

**25.**        Defendant Partner Francese returned to work in or about mid-February of 2017. To Plaintiffs shock, he immediately began calling her "Cutie," and stated, "Hey cutie, I know I shouldn't say that, is it ok I call you 'cutie'?"

**Answer:**        Denies the allegations of Paragraph 25.

**26.**        Defendant Partner Francese invited Plaintiff into his office, told her to sit and began openly and purposefully staring at her breasts while he asked her how her day had been. Thereafter, Defendant Partner Francese made a habit of staring directly at Plaintiffs breasts each time they interacted.

**Answer:**        Denies the allegations of Paragraph 25.

**27.**        Plaintiff chose to ignore his harassing comments and conduct. She was determined to not let Defendant Partner Francese's disturbing and demeaning behavior affect her opportunity to work for Defendant Troutman.

**Answer:**        Denies the allegations of Paragraph 27.

**28.**        Defendant Partner Francese soon increased the hostility by making daily harassing comments designed to and having the effect of making Plaintiff feel uncomfortable, vulnerable, and sexualized.

**Answer:**        Denies the allegations of Paragraph 28.

**29.**        Early on in her employment at Troutman Sanders, Defendant Partner Francese scheduled Plaintiff to have one-on-one weekly expense meetings on Tuesdays (hereinafter the "Tuesday Expense Meeting") where he would initiate demeaning conversations.

**Answer:**        Denies the allegations of Paragraph 29; except admits only that due to Plaintiff's poor performance with his expense reports and the inputting of his recorded work time, Francese initiated the Tuesday Expense Meetings.

30.        For example, Defendant Partner Francese would ask Plaintiff, "Wow, did you wear that for me?"

**Answer:**        Denies the allegations of Paragraph 30.

31.        Throughout her employment with Troutman, Defendant Partner Francese would direct Plaintiff to come behind his desk and stand uncomfortably close to him so that she could "help" him with a word processing issue on his computer. Then, upon information and belief, so that she would know that he was staring at her body, Defendant Partner Francese would say such things as, "I can fix the button [on the back of your blouse] for you if you want."

**Answer:**        Denies the allegations of Paragraph 31.

32.        Plaintiff was horrified but needed her job to support herself and her child, so she tried to talk herself into ignoring the outrageous sexual harassment and hoped that it would not worsen. Plaintiff tried to avoid being alone with Defendant Partner Francese and simply ignored his comments.

**Answer:**        Denies the allegations of Paragraph 32.

33.        During February of 2017, Defendant Partner Francese began repeatedly and persistently asking Plaintiff to go to dinner with him.

**Answer:**        Denies the allegations of Paragraph 33.

34.        When Plaintiff ignored his requests, Defendant Partner Francese attempted to incentivize Plaintiff by telling her that she could pick any restaurant, no matter the cost. Francese told Plaintiff all she needed to do was add it to his calendar.

**Answer:**        Denies the allegations of Paragraph 34.

35.        After several failed attempts to pressure Plaintiff into going to dinner with him, Defendant Partner Francese reframed his request by insisting Plaintiff attend a "work dinner" with him.

**Answer:**        Denies the allegations of Paragraph 35.

36.        Realizing that she had no choice, Plaintiff agreed to attend the "work dinner" on March 29, 2017 at Gaonnuri, an upscale Korean restaurant known for its table barbeque service on the 39th floor of a skyscraper in Manhattan. Defendant Partner

Francese gleefully advised her that the dinner would take place at Gaonnuri, an upscale Korean restaurant known for its table barbeque service on the 39th floor of a skyscraper in Manhattan on March 29, 2017. Plaintiff feared that Defendant Partner Francese felt that he was taking Plaintiff on a "date," and she became extremely anxious about being alone with him outside of the office.

      **Answer:**      Denies the allegations of Paragraph 36.

      **37.**      On the morning of March 29, 2017, Defendant Partner Francese again called Plaintiff into his office, and made her come stand behind his desk, allegedly to view his computer monitor. As she turned to walk away, Defendant Partner Francese patted her upper left thigh, just below her buttocks. Plaintiff was so stunned, humiliated, and embarrassed that she simply stumbled out of the office.

      **Answer:**      Denies the allegations of Paragraph 37.

      **38.**      Defendant Partner Francese called after her that he was "looking forward to [their] dinner."

      **Answer:**      Denies the allegations of Paragraph 38.

      **39.**      Plaintiff spent the day fearing the so called "work dinner" and rehearsing what she would say to Defendant Partner Francese so that he would understand that he could not harass her.

      **Answer:**      Denies the allegations of Paragraph 39.

      **40.**      That night, as they waited for their table, Plaintiff stated, "I didn't feel comfortable with you touching me today."

      **Answer:**      Denies the allegations of Paragraph 40.

      **41.**      Appearing shocked, Defendant Partner Francese feigned ignorance and responded, "what do you mean?"  Plaintiff said, "I'm not that type of woman." Defendant Partner Francese failed to respond or apologize, he simply shook his head and then changed the subject. Still, Plaintiff hoped that he got the message that she would not acquiesce to his sexual harassment.

      **Answer:**      Denies the allegations of Paragraph 41.

      **42.**      At dinner, Defendant Partner Francese secured a table with a view of the city skyline and demanded that Plaintiff "pull her chair closer" to him. Defendant partner Francese proceeded to tell Plaintiff that he and another Troutman attorney had hired "Korean prostitutes" to perform oral sex on them in the backseat of a car. The story made Plaintiff feel horrified, embarrassed and scared.

      **Answer:**      Denies the allegations of Paragraph 42.

43.     At the end of the dinner, Defendant Partner Francese insisted on calling Plaintiff a car to take her home.  When the car arrived and she was about to depart, he made it clear that he expected a hug from her, which she awkwardly submitted to. As she was about to get into the car Defendant Francese gruffly ordered, "Let me get a kiss," and moved toward Plaintiff in an attempt to kiss her. Plaintiff pushed him away and got into the car. Plaintiff was extremely scared and upset and she began shaking and experiencing severe anxiety. Plaintiff felt nauseous and feared that she would throw up.

Answer:     Denies the allegations of Paragraph 43.

44.     After the dinner, Plaintiff deliberately and clearly ignored Defendant Partner Francese in an effort to have him stop his sexual advances.

Answer:     Denies the allegations of Paragraph 44.

45.     Thereafter, Plaintiff was relieved to see that Defendant Partner Francese had apparently gotten the message and seemed to "back off" in the weeks following their dinner.

Answer:     Denies the allegations of Paragraph 45.

46.     In the Spring of 2017, Plaintiff experienced significant tragedies in her life, including having to financially assist her mother who was suffering from serious illnesses. At a May 2017 weekly meeting, Plaintiff revealed to Defendant Partner Francese that she was dealing with some personal issues so that he would be aware that she may need some time off. Defendant Partner Francese listened and told her "to let [him] know how [he] could help." Defendant Partner Francese offered specifically to provide time off from work, financial help, and to excuse any late arrivals, but strangely, he told her that he would only help if Plaintiff expressly "asked [him] for help."

Answer:     Denies the allegations of Paragraph 46, including that Francese offered to provide Plaintiff time off from work or excuse her late arrivals, or had the authority to do so; except admits only that at work Plaintiff regularly volunteered information about her family; and denies knowledge or information sufficient to form a belief as to the truth of the first sentence.

47.     Plaintiff was hopeful that her employment relationship with Defendant Partner Francese had turned a corner, and that he would no longer sexually harass her and that they could become colleagues.

Answer:     Denies the allegations of Paragraph 47.

**48.     Throughout May of 2017, Defendant Partner Francese seemed to adopt a paternal role towards Plaintiff and regularly invited her into his office to kindly chat and would offer her candy that he kept on his desk. Defendant Partner Francese asked Plaintiff to continue to update him about her family hardship and financial difficulties. Defendant Partner Francese attempted to hold himself out as a supportive and paternal figure by asking Plaintiff how she was dealing with the various difficulties she was facing.**

**Answer:**     Denies the allegations of Paragraph 48; except admits only that

Francese kept candy in his office and occasionally would "chat" with Plaintiff about her personal

and family life.

**49.     At this time, as a result of recent family deaths, Plaintiff's financial situation had become more serious and difficult. As a single mother, Plaintiff felt she had no one else to tum to except Defendant Partner Francese, and she ultimately asked Defendant Partner Francese for assistance. Defendant Partner Francese gave her a loan of $500 via wire transfer and then a check in the amount of $2,100.00.**

**Answer:**     Denies the allegations of paragraph 49; except denies knowledge

or information sufficient to form a belief as to the truth of the allegations of the first sentence,

and whether "[a]s a single mother, Plaintiff felt she had no one else to tum to" except Francese;

and admits only that on several occasions Plaintiff asked Francese for loans that Plaintiff said she

needed due to various family crises and, as a result, Francese loaned Plaintiff the money she

requested.

**50.     At the next weekly meeting in May of 2017, Plaintiff continued to update Defendant Partner Francese as to the state of her personal issues. In response, Defendant Partner Francese winked at Plaintiff and said, "You know what you need? You need a Sugar Daddy."**

**Answer:**     Denies the allegations of Paragraph 50; except admits only that

Plaintiff told Francese on multiple occasions that she was experiencing financial crises.

**51.     Plaintiff understood that Defendant Partner Francese was referring to the idea that Defendant Partner Francese would be willing to pay her money in exchange for sexual acts, and Plaintiff could use that money to help her family situation.**

**Answer:**     Denies the allegations of Paragraph 51.

52.     Upon information and belief, Defendant Partner Francese used Plaintiff's vulnerable and indebted state, to escalate his coercive sexual advances.

Answer:     Denies the allegations of Paragraph 52.

53.     Thereafter, Defendant Partner Frances [sic] once again began making constant comments about Plaintiff's appearance and it was clear that he was no longer "behaving."

Answer:     Denies the allegations of Paragraph 53.

54.     On or about June 15, 2017, Defendant Partner Francese began asking Plaintiff when they were going to have dinner together again. He would frequently say, "pick day and put it in my calendar."  Plaintiff avoided answering Defendant Partner Francese and responded by saying, "No, thank you," fearing that "dinner" now would again come with sexual demands attached.

Answer:     Denies the allegations of Paragraph 54.

55.     When Plaintiff refused dinner, Defendant Partner Francese attempted to portray himself in a generous and paternal light. He told Plaintiff, "I'm here for you" and encouraged her to share more personal information with him in an effort to groom her.

Answer:     Denies the allegations of Paragraph 55.

56.     In late June of 2017, Defendant Partner Francese planned a luxury vacation for himself, his wife, his kids and grandchildren in Mexico. At the same time, Defendant Partner Francese, knowing of Plaintiffs personal and financial issues, directed Plaintiff to come behind his desk and asked, "Where would you go if you were to go on vacation?"  Defendant Partner Francese invited Plaintiff to look at all the all-inclusive vacation packages he was reviewing on his computer monitor and to "pick one."

Answer:     Denies the allegations of Paragraph 56; except admits only that in

2017, Francese planned a vacation for himself and his family to Mexico.

57.     As she could never afford anything like the trips he was reviewing, Plaintiff was incredibly uncomfortable and tried to laugh it off. Defendant Partner Francese's tone became serious and he reiterated to Plaintiff: "Pick a place, wherever you want to go...all you have to do is let me know."

Answer:     Denies the allegations of Paragraph 57.

58.     Plaintiff understood that Defendant Partner Francese's offer to pay for a luxury vacation was an attempt to be her "Sugar Daddy" as he had previously suggested. Plaintiff became even more anxious and humiliated. She wondered when the

next sexual demand going to happen, and why this was happening only to her. At the same time, Plaintiff had already begun to normalize Defendant Partner Francese's behavior so that she could put on a cheerful mask and focus on her work.

> **Answer:**       Denies the allegations of Paragraph 58.

**59.       Plaintiff refused to accept his vacation offer and walked out of his office.**

> **Answer:**       Denies the allegations of Paragraph 59, including that there was

any "vacation offer."

**60.       Following the encounter where Defendant Partner Francese attempted to ply Plaintiff with promises of a vacation, she continued to excel at her job as a legal secretary and ultimately was invited to take on a heavier workload and wider range of work.**

> **Answer:**       Denies the allegations of Paragraph 60.

**61.       Although Plaintiff was only working for Defendant Partner Francese's practice group within the firm when she began working at Troutman, she quickly became known for being exceptionally hard working and efficient. By March of 2017, she was asked to start assisting in the Construction Practice Group, as well other Partners in the Corporate group.**

> **Answer:**       Denies the allegations of Paragraph 61; except admits only that

that at all times during her employment, Plaintiff was part of a team that was expected to support

other attorneys in the Corporate and/or Construction sections in Troutman's New York office

who needed her assistance, and that in September 2017, in addition to her then-current duties,

Plaintiff was assigned to serve as primary support for a partner in the Construction section.

**62.       Plaintiff greatly enjoyed working with the Construction practice group and other attorneys within the Corporate Practice Group where she was well respected by the partners and associates and did not experience sexual harassment.**

> **Answer:**       Denies knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 62.

**63.       On October 25, 2017, Defendant Partner Francese insisted Plaintiff attend a nonprofit Fundraising Event with him. At the event Defendant Partner Francese**

**introduced Plaintiff to many of his associates and acquaintances. When he introduced Plaintiff, Francese would refer to her as "my personal assistant."**

> **Answer:** Denies the allegations of Paragraph 63; except admits only that Plaintiff attended a fundraising event with Francese on October 25, 2017, and at the event Francese introduced Plaintiff as his "secretary" to associates and acquaintances of his.

**64.     At the end of the event, Defendant Partner Francese insisted that Plaintiff share a taxi with him since they were both headed uptown. When they reached Plaintiffs stop, Defendant Partner Francese hugged her, then surprised her by kissing her, unexpectedly. Plaintiff was outraged and humiliated made her feelings clear to Defendant Partner Francese. Humiliated by Defendant Partner Francese's nonconsensual kiss, Plaintiff immediately exited the taxi.**

> **Answer:** Denies the allegations of Paragraph 64

**65.     Following her refusal to engage with him sexually, Defendant Partner Francese made it clear that he and Plaintiffs job was in jeopardy. From on or about November of 2017 through February 2018, Defendant Partner Francese repeatedly warned Plaintiff that the firm's Human Resources personnel were watching her closely, including her attendance, performance, arrivals, departures and lunches. He told her that the Human Resources Manager Patrizia DeGennaro (hereinafter "HR Manager DeGennaro") was instructing her fellow legal secretaries, including but not limited to Amy Reynoso (hereinafter "Legal Secretary Reynoso"), to monitor Plaintiff.**

> **Answer:** Denies the allegations of Paragraph 65; except admits only that Francese repeatedly warned Plaintiff that her frequent absences and tardiness might become an issue for Troutman's HR department, to whom she reported.

**66.     Further, Defendant Partner Francese began regularly reminding Plaintiff that he "wanted to see [her] be successful in the firm" and that he alone was her ally, her protector and the only person trying to "save [her] because [her] job [was] on the line."**

> **Answer:** Denies the allegations of Paragraph 66; except admits only that from time to time Francese told Plaintiff that (in words or substance) he wanted her to succeed at her job, and that her job was in jeopardy due to poor performance, lateness, and excessive absenteeism.

67.     Upon information and belief, Defendant Partner Francese made these coercive statements in order to isolate Plaintiff from possible sexual harassment reporting resources, including her peers and the firm's the Human Resources department.

Answer:     Denies the allegations of Paragraph 67.

68.     On or about early December 2017, having isolated Plaintiff within the firm, Defendant Partner Francese instructed Plaintiff to attend a holiday dinner with him at Wolfgang Steakhouse.

Answer:     Denies the allegations of Paragraph 68.

69.     Plaintiff found that she was increasingly anxious at work and especially panic-stricken before their weekly Tuesday Expense Meetings. Believing that the only way she would keep her job at Troutman was to remain in Defendant Partner Francese's good graces, Plaintiff did not feel she had a choice, but committed to herself that she would use the dinner to establish verbal and physical boundaries and insist that Francese maintain a strictly professional relationship with her.

Answer:     Denies the allegations of Paragraph 69.

70.     At Wolfgang Steak House, Defendant Partner Francese chose a dimly lit table in a back corner of the restaurant. Defendant Partner Francese immediately told Plaintiff that "[he] liked [her]" and that he "[was] looking for a friend of some sort to keep [him] company."  Defendant Partner Francese explained that the type of friend he was looking for was someone with whom he could spend time with during the week and attend Broadway shows, have dinners, and go to clubs. He further explained he had two women that had previously been his friends, and that he had "helped" those women. Defendant Partner Francese continued that that he could help Plaintiff in a similar way. Plaintiff understood that Defendant Partner Francese was looking for a romantic or sexual relationship with her in exchange for his offers of financial assistance.

Answer:     Denies the allegations of Paragraph 70.

71.     In response, Plaintiff firmly and unambiguously told Francese "I cannot accept your offer."  Plaintiff explained that "[she] enjoy[ed] working for Troutman" and "[she was] happy working for the attorneys [she was] assigned to." Plaintiff further explained that "[she is] not that kind of woman."

Answer:     Denies the allegations of Paragraph 71.

72.     Defendant Partner Francese in turn asked if she wanted him "to stop" to which Plaintiff replied, "yes."  Plaintiff then reminded him that he was married and that it was wrong of him to make such propositions and advances.

Answer:     Denies the allegations of Paragraph 72.

14

73.     Defendant Partner Francese did not respond; instead he stroked his hand against her right cheek, further causing Plaintiff extreme discomfort and humiliation.

Answer:          Denies the allegations of Paragraph 73.

74.     Following the dinner where Plaintiff refused Defendant Partner Francese's quid pro quo offer and objected to Defendant Partner Francese's conduct and asked him to stop, he continued to coerce, manipulate and harass Plaintiff by telling her that he was her only ally and that he alone protected her job. He also repeatedly reminded Plaintiff that the firm's Human Resources personnel were watching her closely.

Answer:          Denies the allegations of Paragraph 74.

75.     As a direct result of these repeated threats, Plaintiff continued to feel isolated, paranoid and nervous in the office and worried that she was being retaliated against for telling Defendant Partner Francese to stop harassing her.

Answer:          Denies the allegations of Paragraph 75.

76.     At a Tuesday Expense Meeting following the dinner at Wolfgang Steak House, Defendant Partner Francese asked Plaintiff whether she really wanted him to "stop." Plaintiff understood that he was referring to the conversation they had during dinner. Knowing she could not have been clearer in each of the previous instances where she asked Defendant Partner Francese to stop harassing and vulgar behavior toward her, the question caused her to feel anxious and embarrassed. Nevertheless, Plaintiff was able to muster the courage to firmly and emphatically say "yes" and then asked him what she had done "to attract this behavior?" She told Defendant Partner Francese that she could recall working for difficult attorneys in her twenty-year career, noting that one had been particularly difficult, but that she had never been subjected to the language and behavior that Defendant Partner Francese directed at her on a daily basis.

Answer:          Denies the allegations of Paragraph 76.

77.     Defendant Partner Francese responded, "Did he ask you to suck his dick?" Francese was referring to the attorney that Plaintiff had worked for previously and noted was particularly difficult.

Answer:          Denies the allegations of Paragraph 77.

78.     Plaintiff was shocked and humiliated by Francese's comment.

Answer:          Denies the allegations of Paragraph 78.

79.     Defendant Partner Francese then outrageously asked Plaintiff twice, "do you shave your pubic hair?" Near speechless, Plaintiff responded by asking, "Are you serious? Are you finished?" and then left his office.

  **Answer:**  Denies the allegations of Paragraph 79.

  **80.**  **Later that evening, Plaintiff sent Defendant Partner Francese a text that read, "[h]ow would you like it if someone said that to you daughters? If their boss asked them to suck his dick?"**

  **Answer:**  Denies the allegations of Paragraph 80.

  **81.**  **Defendant Partner Francese replied with "???"**

  **Answer:**  Denies the allegations of Paragraph 81.

  **82.**  **Plaintiff realized that by responding with three questions marks, Defendant Partner Francese was framing the text message conversation to appear as if he had no understanding of the reference to his harassing and vulgar comment.**

  **Answer:**  Denies the allegations of Paragraph 82.

  **83.**  **The very next morning after receiving his text message, Plaintiff immediately began to feel extremely worried for her job, her career and her future, and felt overwhelmingly scared for sending the initial text message.**

  **Answer:**  Denies the allegations of Paragraph 83.

  **84.**  **After a sleepless night, Plaintiff went directly to Defendant Partner Francese's office to ask for forgiveness feeling she had done something wrong. When Plaintiff apologized, Defendant Partner Francese reprimanded her, and threatened her by saying, "You know what you did was dangerous, very dangerous" and, "You put it in writing." Plaintiff understood that Defendant Partner Francese knew a text message was potential evidence of his harassing and unlawful behavior that could expose him to consequences such as losing his job or worse.**

  **Answer:**  Denies the allegations of Paragraph 84.

  **85.**  **Immediately, Plaintiff felt intimidated and threatened and deleted her text message following her meeting with Defendant Partner Francese. Defendant Partner Francese placed Plaintiff under extreme stress by blaming her for his "dangerous" and sexually harassing comment. Plaintiff felt that she had done something horribly wrong and, since the situation, Defendant Partner Francese created an uncomfortable situation where Plaintiff was afraid and felt threatened that she might lose her job.**

  **Answer:**  Denies the allegations of Paragraph 85.

  **86.**  **Following her written objection to his comment, Defendant Partner Francese began subjecting Plaintiff to increased scrutiny and started micro-managing her work.**

> **Answer:**    Denies the allegations of Paragraph 86.

**87.    Plaintiff frustratingly noticed that her assignments were suddenly not "up to par."**

> **Answer:**    Denies the allegations of Paragraph 87.

**88.    Further, Defendant Partner Francese began overly scrutinizing her work and making demeaning and embarrassing comments, including, "I need a secretary."**

> **Answer:**    Denies the allegations of Paragraph 88; except admits that in or about mid-April 2018, while Plaintiff was on a personal phone call (which happened frequently) Francese came out of his office and exclaimed, "I need a secretary."

**89.    Simultaneously, Defendant Partner Francese continued to remind her that he was the only one who could "save" her.**

> **Answer:**    Denies the allegations of Paragraph 89.

**90.    On or about April 10, 2018, Plaintiff met with the Human Resources Department for her annual review.**

> **Answer:**    Admits the allegations of Paragraph 90, and for the sake of clarification states further that Plaintiff met with Patrizia DeGennaro, Senior Human Resources Manager.

**91.    HR Manager DeGennaro explained to Plaintiff that there were "previously undisclosed complaints" about her work performance from "anonymous sources" and as a result Plaintiff was not going to receive a raise in salary for the upcoming year. Plaintiff felt humiliated and utterly despondent. She realized that the anonymous source could only have been Defendant Partner Francese. She further realized that all of his "warnings" about Human Resources were being actualized because she rejected his offers to "save" her.**

> **Answer:**    Denies the allegations of Paragraph 91; except admits only that during Plaintiff's performance evaluation in April 2018, DeGennaro shared with Plaintiff complaints about her work performance from several individuals whose identities DeGennaro did not disclose pursuant to Troutman's standard practice, and that DeGennaro told Plaintiff she would not be receiving a merit increase for the upcoming year.

92.     Upon information and belief, Defendant Partner Francese's offers to "save" Plaintiff were offers to ensnare Plaintiff in a situation where she would be obligated to provide him with sexual favors.

Answer:        Denies the allegations of Paragraph 92.

93.     On or about April 25, 2018, Defendant Partner Francese took Plaintiff to a lunch he had planned. In his Microsoft Outlook calendar, he titled the event "Plant shopping." Plaintiff and Defendant Partner Francese arrived at the restaurant, and Defendant Partner Francese requested a table in the back.

Answer:        Denies the allegations of Paragraph 93; except admits that in April 2018, Francese took Plaintiff to lunch and then to a flower shop, and that the calendar entry for this event was entitled "Plant Shop."

94.     Shortly after sitting down, Defendant Partner Francese got up from his chair, stepped to Plaintiffs side of the table, and kissed Plaintiff on her lips.

Answer:        Denies the allegations of Paragraph 94.

95.     Plaintiff did not expect, consent, or welcome the kiss. Plaintiff was disgusted and felt nauseous, intimidated, shocked, and extremely distressed.

Answer:        Denies the allegations of Paragraph 95, including that Francese kissed Plaintiff.

96.     After the kiss, the waitress came to the table to take Plaintiff and Defendant Partner Francese's order. After giving their orders to the waitress and receiving their meals, Plaintiff excused herself, went to the bathroom where she became physically ill and vomited.

Answer:        Denies the allegations of Paragraph 96, including that Francese kissed Plaintiff; except denies knowledge or information sufficient to form a belief as to what happened when Plaintiff went to the bathroom.

97.     When Plaintiff returned from the bathroom, the food was on the table. Plaintiff told Defendant Partner Francese that she did not feel well and would take her food to go.

Answer:        Denies the allegations of Paragraph 97; except admits only that Plaintiff asked the server to pack her lunch to go.

18

98.     Defendant Partner Francese refused to leave and instead slowly ate his food and did not allow Plaintiff to leave. He told Plaintiff she could order a drink if she wanted. Plaintiff did not order a drink. During the lunch, Defendant Partner Francese talked to Plaintiff about her annual review and his expectations for Plaintiff as his secretary.

Answer:     Denies the allegations of Paragraph 98; except admits only that during the lunch Plaintiff complained about not getting a raise, and Francese urged her to apply herself to better her work performance.

99.     After Defendant Partner Francese finished eating his food, he and Plaintiff left the restaurant and he insisted that they stop at a flower shop down the block, even though Plaintiff had repeatedly stated that she was ill. At the flower shop, Defendant Partner Francese bought himself an orchid and bought another one for Plaintiff.

Answer:     Denies the allegations of Paragraph 99; except admits that after the lunch Francese and Plaintiff stopped at a flower shop where he purchased an orchid plant for his office and one for Plaintiff's desk area.

100.     On or about April 26, 2018, Plaintiff confided in Defendant Troutman Associate Adam Dennett (hereinafter "Associate Dennett").

Answer:     Denies the allegations of Paragraph 100, including that Plaintiff "confided" anything to Dennett of a sexual or harassing nature; except admits only that after Plaintiff's negative annual review, she spoke with Dennett and complained that Francese was a difficult boss, was unhappy with her performance, and (without giving specifics) had made comments she thought were inappropriate.

101.     Associate Dennett immediately confirmed that he had witnessed Defendant Partner Francese making inappropriate comments and that Defendant Partner Francese was known throughout the firm for the same type of conduct Plaintiff had experienced.  Dennett further mentioned other associates by name that had also witnessed Defendant Partner Francese making harassing comments.

Answer:     Denies the allegations of Paragraph 101.

102.     Associate Dennett thereafter encouraged Plaintiff to immediately report the ongoing harassment to Human Resources, and further stated that if she did not, he would have to report the harassment himself.

**Answer:**      Denies the allegations of Paragraph 102; except admits only that Dennett told Plaintiff that if Francese had said or done anything inappropriate, she needed to report it to Human Resources or Dennett would do so.

**103.    Facing an ultimatum, Plaintiff agreed to report. She waited until Defendant Partner Francese was out of office to report to Human Resources the ongoing, severe and unflagging sexual harassment she suffered under Defendant Partner Francese.**

**Answer:**      Denies the allegations of Paragraph 103; except admits only that on April 27, 2019, Plaintiff complained to DeGennaro and Raffaela Zimbaro (Office Manager for Troutman's New York office) about Francese.

**104.    After explaining that she was subjected to grossly inappropriate touching, propositioning, abusive and vulgar comments, and that Defendant Partner Francese alienated her from possible reporting mechanisms available through her peers and Human Resources by inducing paranoia, Plaintiff was advised to not come into the office on the following Monday while Human Resources investigated her complaint.**

**Answer:**      Denies the allegations of Paragraph 104; except admits only that Plaintiff alleged that she had been subjected to inappropriate touching, propositioning, and comments; and further admits only that Plaintiff was advised to not come into the office on the following Monday while Human Resources investigated her complaint.

**105.    After the initial investigation, the firm flew in Shawna Beldick, the firm's Human Resources Director (hereinafter "HR Director Beldick").**

**Answer:**      Denies the allegations of Paragraph 105; except admits only that Troutman took Plaintiff's allegations seriously and Shana Beldick flew from Atlanta to New York to meet with Plaintiff.

**106.    HR Director Beldick insisted that Plaintiff meet her in a public place over breakfast to discuss the serious allegations of sexual harassment by Defendant Partner Francese.**

**Answer:**      Denies the allegations of Paragraph 106; except admits that, in response to Plaintiff's having said she was too anxious to come into the office, Beldick asked

that Plaintiff meet her in a public place over breakfast to discuss Plaintiff's serious allegations

against Francese.

**107.    Plaintiff, scared and experiencing ever worsening anxiety about the situation, recounting her abusive work relationship with Defendant Partner Francese, was unable to attend the meeting.**

**Answer:**        Denies the allegations of Paragraph 107, including that Plaintiff

had an abusive relationship with Francese; except admits only that Plaintiff refused to attend the

meeting with Beldick.

**108.    At that time, Plaintiff decided to seek much needed psychological care and treatment.**

**Answer:**        Denies knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 108.

**109.    After months of psychological treatment, Plaintiff continued to suffer serious psychological stress as a result of Francese's conduct. Plaintiff was reasonably unable to return to work at Troutman knowing that Defendant Partner Francese was still working there.**

**Answer:**        Denies knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 109.

**110.    On or about August 20, 2018 Plaintiff was constructively discharged from her employment with Troutman.**

**Answer:**        Denies the allegations of Paragraph 110.

**111.    Throughout her employment with Defendants, Plaintiff was subjected to quid pro quo and hostile working environment sexual harassment. When she objected to that harassment, Plaintiff was retaliated against and ultimately discharged in violation of law.**

**Answer:**        Denies the allegations of Paragraph 111.

## FIRST CAUSE OF ACTION
*Sexual Harassment and Hostile Work Environment under Title VII*

**112.    Plaintiff repeats and re-alleges the each and every preceding allegation.**

**Answer:**         Incorporates its responses to Paragraphs 1 through 111.

**113.    Plaintiff is a female at all relevant times and is a member of a protected class under 42 U.S.C. §§2000e *et. seq.***

**Answer:**         States that the allegations of Paragraph 113 are legal conclusions to

which no response is required; except admits that Plaintiff is a female.

**114.    Plaintiff was and is qualified to work as an employee for Defendant Troutman and is able to perform all of the duties required by the position held at Defendant Troutman.**

**Answer:**         Denies the allegations of Paragraph 114; and for the sake of

clarification states further that Plaintiff generally performed her job poorly.

**115.    Defendants subjected Plaintiff to a hostile work environment as well as adverse employment actions because of her gender.**

**Answer:**         Denies the allegations of Paragraph 115.

**116.    Plaintiff was unlawfully subjected to sexual harassment when Defendants knowingly allowed Plaintiff to endure unceasing sexual comments, demands and unwelcome touching and grabbing by Defendant Partner Francese during her employment. Defendants further subjected Plaintiff to sexual harassment by doing nothing and threatening retaliation against her when she reported and objected to the sexual harassment.**

**Answer:**         Denies the allegations of Paragraph 116.

**117.    The sexual harassment Plaintiff suffered at Defendant Troutman was severe and pervasive, unwelcome by Plaintiff and would be offensive to a reasonable person.**

**Answer:**         Denies the allegations of Paragraph 117, including that Plaintiff

suffered sexual harassment at Troutman.

**118.    The sexual harassment Plaintiff suffered at Defendant Troutman severely affected the terms and conditions of her employment.**

**Answer:**         Denies the allegations of Paragraph 118, including that Plaintiff

suffered sexual harassment at Troutman.

119.     **Plaintiff repeatedly objected to the sexual harassment and retaliation by her Supervisor and reported the harassment to her co-worker and to Defendant's human resources. The sexual harassment Plaintiff suffered was repeatedly conducted by Defendant Partner Francese and was witnessed by Defendant's employees. Defendant knew or should have known about the sexual harassment and discrimination and its effects on Plaintiffs terms and conditions of her employment. Despite this, Defendants failed to take necessary steps to remedy the sexual harassment and hostile working environment based on the same which ultimately and proximately caused Plaintiff to suffer severe anxiety and stress.**

          **Answer:**      Denies the allegations of Paragraph 119, including that Plaintiff

suffered sexual harassment and retaliation at Troutman.

120.     **Defendants' violations of Plaintiff's rights have resulted in Plaintiff's termination, as well as loss of monetary and other benefits associated with her employment.**

          **Answer:**      Denies the allegations of Paragraph 120, including that Plaintiff's

rights were violated.

121.     **Defendants' violations of Plaintiff's rights have also resulted in Plaintiff's extreme stress, anxiety regarding her ability, to provide for herself and her family, ongoing humiliation among her family, friends and co-workers, damage to her good reputation, and disruption of her personal life.**

          **Answer:**      Denies the allegations of Paragraph 121, including that Plaintiff's

rights were violated.

## SECOND CAUSE OF ACTION
*Sexual Harassment under NYSHRL and NYCHRL*

122.     **Plaintiff repeats and re-alleges the each and every preceding allegation.**

          **Answer:**      Incorporates its responses to Paragraphs 1 through 121.

123.     **Plaintiff is a female and thus is a member of a protected class under New York State and New York City Human Rights Laws.**

          **Answer:**      States that the allegations of Paragraph 123 are legal conclusions to

which no response is required; except admits that Plaintiff is a female.

124.     **Plaintiff was unlawfully subjected to sexual harassment when Defendants' Defendant Partner Francese made unceasing sexual and explicit comments**

and demands. Defendants further subjected Plaintiff to sexual harassment by retaliating against her when she reported the sexual harassment by terminating her.

        **Answer:**        Denies the allegations of Paragraph 124.

        **125.**    **The sexual harassment Plaintiff suffered at Defendants was severe and pervasive, unwelcome by Plaintiff and would be offensive to a reasonable person.**

        **Answer:**        Denies the allegations of Paragraph 125, including that Plaintiff

was subjected to sexual harassment "at Defendants."

        **126.**    **The sexual harassment Plaintiff suffered at Defendants severely affected the terms and conditions of her employment.**

        **Answer:**        Denies the allegations of Paragraph 126, including that Plaintiff

was subjected to sexual harassment "at Defendants."

        **127.**    **Plaintiff repeatedly objected to the harassment by her Supervisor, Defendant Partner Francese and Plaintiff reported the harassment to Defendants human resources personnel. Defendants knew or should have known about the harassment and discrimination and its effects on Plaintiffs employment. Despite this, Defendants failed to take necessary steps to remedy the discrimination.**

        **Answer:**        Denies the allegations of Paragraph 127.

        **128.**    **Defendants' violations of Plaintiff's rights have resulted in Plaintiff's loss of monetary and other benefits associated with her employment.**

        **Answer:**        Denies the allegations of Paragraph 128, including that Plaintiff's

rights were violated.

        **129.**    **Defendants' violations of Plaintiff's rights have also resulted in Plaintiff's extreme stress, anxiety regarding her ability to provide for herself, ongoing humiliation among her family, friends and co-workers, damage to her good reputation, and disruption of her personal life.**

        **Answer:**        Denies the allegations of Paragraph 129, including that Plaintiff's

rights were violated.

## THIRD CAUSE OF ACTION
*Retaliation under Title VII*

**130.    Plaintiff repeats and re-alleges the each and every preceding allegation.**

**Answer:**        Incorporates its responses to Paragraphs 1 through 129.

**131.    Plaintiff is a female and thus is a member of a protected class under Title VII.**

**Answer:**        States that the allegations of Paragraph 131 are legal conclusions to which no response is required; except admits that Plaintiff is a female.

**132.    Plaintiff was unlawfully subjected to retaliation when she objected to and complained about unlawful supervisorial sexual harassment to her co-workers, her immediate Supervisor, as well as Defendants. Following her objections and complaints of supervisorial sexual harassment, Defendants subjected Plaintiff to retaliation by punishing her, including but not limited to termination.**

**Answer:**        Denies the allegations of Paragraph 132, including that Plaintiff was subject to unlawful supervisory sexual harassment.

**133.    Defendants' overt retaliation against Plaintiff ultimately resulted in Plaintiff's wrongful termination.**

**Answer:**        Denies the allegations of Paragraph 133.

**134.    Defendants' violations of Plaintiff's rights resulted in Plaintiff's loss of monetary and other benefits associated with her employment. Defendants' violations of Plaintiff's rights have also resulted in Plaintiff's extreme stress and fear, anxiety about her future and ability to provide for herself, ongoing humiliation among her family, friends and co-workers, damage to her good reputation, and disruption of her personal life.**

**Answer:**        Denies the allegations of Paragraph 134, including that Plaintiff's rights were violated.

## FOURTH CAUSE OF ACTION
*Retaliation under NYSHRL and NYCHRL*

**135.    Plaintiff repeats and re-alleges the each and every allegation contained in.**

**Answer:**        Incorporates its responses to Paragraphs 1 through 134.

136.    Plaintiff is a female and thus is a member of a protected class under NYSHRL and NYCHRL.

Answer:    States that the allegations of Paragraph 136 are legal conclusions to which no response is required; except admits that Plaintiff is a female.

137.    Plaintiff was unlawfully subjected to retaliation when she objected to and complained about unlawful supervisorial and co-worker sexual harassment to her co-workers, harassers, her immediate manager, her immediate Supervisor, as well as Defendants. Following her multiple complaints of supervisorial harassment, Defendants subjected Plaintiff to retaliation by terminating her.

Answer:    Denies the allegations of Paragraph 137, including that Plaintiff was subject to unlawful supervisory and co-worker sexual harassment.

138.    Defendants' overt retaliation against Plaintiff and fellow female co-workers ultimately resulted in Plaintiffs termination.

Answer:    Denies the allegations of Paragraph 138.

139.    Defendants' violations of Plaintiff's rights resulted in Plaintiff's loss of monetary and other benefits associated with her employment. Defendants' violations of Plaintiff's rights have also resulted in Plaintiff's extreme stress and fear, anxiety about her future and ability to provide for herself, ongoing humiliation among her family, friends and co-workers, damage to her good reputation, and disruption of her personal life.

Answer:    Denies the allegations of Paragraph 139, including that Plaintiff's rights were violated.

*          *          *

140.    Because Plaintiff did not bring her allegations to the attention of Troutman until after her negative annual review in April 2018, and failed to timely invoke the policies and procedures Troutman has implemented and published throughout the firm to prohibit, identify, and address employment discrimination of all kinds, including sexual harassment, this Answer necessarily is based on an investigation undertaken well after the events alleged.  Troutman's

investigation is continuing, and Troutman reserves the right to amend this Answer if other or different facts come to its attention.

*          *          *

### FIRST AFFIRMATIVE DEFENSE

141.     The Complaint was filed in violation of Rule 11 of the Federal Rules of Civil Procedure, including as indicated by the Second through Fourth Affirmative Defenses below.

### SECOND AFFIRMATIVE DEFENSE

142.     Plaintiff's claims fail because, to the extent discovery may show, her allegations of wrongdoing are false and were fabricated by her after her negative April 2018 annual review when Plaintiff was told that her job was in jeopardy due to poor performance.

### THIRD AFFIRMATIVE DEFENSE

143.     To lend credence to her claims, Plaintiff was untruthful to Troutman during its investigation of her allegations.  Plaintiff falsely told Troutman that she possessed and would turn over to Troutman an important piece of evidence on which she relied to establish her claims.  Plaintiff later told Troutman that she would not produce the evidence because she did not possess it.  In addition, Plaintiff falsely minimized the number of times, and amounts of money, she borrowed from Francese.  And Plaintiff falsely asserted that, while on leave after making her allegations, her personal Gmail account was accessed without her consent by someone using a specifically identified computer within the firm – which Troutman during its investigation conclusively learned through forensic analysis to be untruthful.  In addition, through its investigation Troutman has learned that many of Plaintiff's allegations are flatly contradicted by contemporaneous documents, including documents written by Plaintiff.

Plaintiff's claims fail in whole or in part because, separate and apart from anything else, these falsehoods provided an independent basis for the termination of Plaintiff's employment.

## FOURTH AFFIRMATIVE DEFENSE

144.    At a time when Plaintiff knew or should have known that litigation between her and Troutman was reasonably likely, Plaintiff deliberately and/or negligently failed to preserve evidence concerning her claims.  In doing so, Plaintiff spoliated relevant evidence. As a sanction, Plaintiff's claims should be dismissed in whole or in part.

## FIFTH AFFIRMATIVE DEFENSE

145.    Plaintiff's claims fail in whole or in part because Plaintiff did not bring her allegations to the attention of Troutman until after her negative annual review in April 2018, and unreasonably failed to timely invoke the policies and procedures Troutman has implemented and published throughout the firm to prohibit, identify, and address employment discrimination of all kinds, including sexual harassment.

## SIXTH AFFIRMATIVE DEFENSE

146.    Plaintiff's claims fail in whole or in part because Troutman took prompt corrective and remedial action.

## SEVENTH AFFIRMATIVE DEFENSE

147.    Plaintiff's claims fail in whole or in part because there was no causal connection between any alleged protected activity and any alleged adverse employment action.

## EIGHTH AFFIRMATIVE DEFENSE

148.    Plaintiff's claims fail in whole or in part because the decision to terminate Plaintiff's employment was for legitimate, non-retaliatory reasons, and was without retaliatory intent, purpose, or effect.

### NINTH AFFIRMATIVE DEFENSE

**149.**    Plaintiff's claims fail in whole or in part because, to the extent that an impermissible employment practice occurred (an allegation which Troutman denies), Plaintiff's employment would have been terminated in the absence of any impermissible motivating factor.

### TENTH AFFIRMATIVE DEFENSE

**150.**    Plaintiff's claims fail in whole or in part because the conduct of Francese as alleged was clearly conduct outside the scope and authority of his responsibilities for Troutman, was in direct contravention of Troutman's express policies, and cannot be attributed to Troutman.

### ELEVENTH AFFIRMATIVE DEFENSE

**151.**    Troutman was never given the opportunity to respond to Plaintiff's claims before the EEOC.  As a result, the Court lacks subject matter jurisdiction over this action.

### TWELFTH AFFIRMATIVE DEFENSE

**152.**    Plaintiff's claims are barred in whole or in part by the applicable statute of limitations and/or to the extent her claims are based on conduct which allegedly occurred more than 180 days before Plaintiff filed a charge of discrimination with the EEOC.

### THIRTEENTH AFFIRMATIVE DEFENSE

**153.**    Plaintiff's claims are barred in whole or in part because, to the extent discovery may show, Plaintiff never received a Notice of Right to Sue on her claims from the EEOC.

### FOURTEENTH AFFIRMATIVE DEFENSE

**154.**    Plaintiff's claims fail in whole or in part because, to the extent discovery may show, Francese's actual actions were not sexual in nature, were not unwelcome, and/or were

not sufficiently severe or pervasive to amount to a change in the terms and conditions of Plaintiff's employment.

### FIFTEENTH AFFIRMATIVE DEFENSE

155.    Plaintiff's claims fail in whole or in part because, to the extent discovery may show, Francese's actual actions did not rise above what a reasonable person would consider petty slights and trivial inconveniences.

### SIXTEENTH AFFIRMATIVE DEFENSE

156.    If Plaintiff prevails on one or more of her claims under Title VII, any compensatory and punitive damages she is awarded must be limited by the damages limitations provisions of 42 U.S.C. § 1981A.

### SEVENTEENTH AFFIRMATIVE DEFENSE

157.    Plaintiff's claims fail in whole or in part because, to the extent discovery may show, Plaintiff failed to mitigate her damages.

### EIGHTEENTH AFFIRMATIVE DEFENSE

158.    Plaintiff's claims for punitive damages are barred because any unlawful conduct of Troutman was not willful and did not constitute malice or conscious indifference to consequences.

### NINETEENTH AFFIRMATIVE DEFENSE

159.    Plaintiff's claims are barred in whole or in part by the doctrines of laches, waiver, and/or estoppel.

### TWENTIETH AFFIRMATIVE DEFENSE

160.    Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

WHEREFORE, defendant Troutman requests judgment:

A.      Dismissing the Complaint;

B.      Awarding Troutman the costs and disbursements of this action,

including attorneys' fees; and

C.      Granting Troutman such other and further relief as is just and

proper under applicable law.

Dated:  New York, New York
          October 15, 2019

FRIEDMAN KAPLAN
  SEILER & ADELMAN LLP

_____

By:   Philippe Adler
        Lance J. Gotko
        Jamuna D. Kelley
        7 Times Square
        New York NY 10036
        (212) 833-1100

        *Attorneys for Defendant*
        *Troutman Sanders LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2019, I caused to be served true and correct

copies of the foregoing Answer via electronic filing with the Court's CM/ECF system and email

to:

EISNER & DICTOR, P.C.
Benjamin N. Dictor (ben@eisnereictor.com)
Andrea A. Pomerantz (andrea@eisnerdictor.com)
39 Broadway, Suite 1540
New York, NY 10006
Tel.: (212) 473-8700

*Attorneys for Plaintiff*
*Jessica Correa*

HARRIS ST. LAURENT LLP
Reid Skibell (rskibell@hs-law.com)
40 Wall Street, 53rd Floor
New York, NY 10005
Tel.: (917) 512-9466

*Attorneys for Defendant*
*Gerald Francese*

Dated:  New York, New York
            October 15, 2019

FRIEDMAN KAPLAN SEILER &
   ADELMAN LLP

_____

Lance J. Gotko (lgotko@fklaw.com)
Philippe Adler (padler@fklaw.com)
Jamuna D. Kelley (jkelley@fklaw.com)
7 Times Square
New York, NY 10036-6516
Tel.: (212) 833-1100
Fax: (212) 373-7996

*Attorneys for Defendant*
*Troutman Sanders LLP*